# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| PATRICIA F. BROWN, | CV 13-48-BLG-SEH-CSO |
| Plaintiff, | |
| | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE ON SUMMARY JUDGMENT MOTIONS** |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Patricia Brown ("Brown") seeks judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433. *Compl. (ECF 1).* On August 5, 2013, Judge Haddon referred this case to the undersigned for all pretrial proceedings. *ECF 14.*[1]

Now pending are the parties' cross-motions for summary judgment. *ECFs 10* (Brown's motion) and *15* (Commissioner's motion). For the reasons stated below, the Court recommends that Brown's

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

motion be denied, the Commissioner's motion be granted, and the ALJ's decision denying DIB be affirmed.

## I.    PROCEDURAL BACKGROUND

In May 2006, Brown filed her first DIB application and alleged disability onset in March 1997. *Tr. 83-85.* That application was denied initially and on reconsideration, and Brown did not request a hearing before an ALJ within the time permitted. *Tr. 46-48, 52-53.* Brown filed her second DIB application in April 2008, claiming disability onset in September 2002. *Tr. 86-87.* That application was denied initially and on reconsideration. *Tr. 10.* Brown requested a hearing, which was dismissed by an ALJ on res judicata grounds. *Tr. 10, 37-38.*

Brown filed the current and third application for DIB in December 2009, identifying March 1997 as her alleged onset date. *Tr. 88-91.* That claim was denied both initially and on reconsideration, and Brown requested a hearing before an ALJ. *Tr. 54-55, 63-65.* That request was initially dismissed in June 2010 on the basis of res judicata. *Tr.* 44-45. In July 2010, Brown requested that the ALJ vacate his Order of Dismissal for good cause, as Brown's attorney on

the first two dismissals had been disbarred and was in prison, and had incorrectly advised her that he had pursued all appeals in a timely manner. *Tr.* 69-71. The ALJ set aside the Order of Dismissal in October 2010. *Tr. 80.*

The ALJ held a hearing on the merits on December 14, 2011. *Tr. 617-70.* On March 22, 2012, the ALJ issued a decision concluding that Brown was not disabled within the meaning of the Social Security Act (the "Act") at any time during the period December 19, 2002, through June 30, 2005, the date she was last insured for DIB. *Tr. 10-22.* The Appeals Council denied Brown's request for review in February 2013, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *Tr. 2-5*; 20 C.F.R. § 422.201(a). This appeal followed. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.   <u>STANDARD OF REVIEW</u>

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.

*Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The Court reviews only the reasons provided by the ALJ, and may not affirm on a ground upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision,

the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III.  <u>**BURDEN OF PROOF**</u>

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.   The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2.     If not so engaged, the claimant must next show that he or
       she has a severe impairment.  *Id.*

3.     The claimant is conclusively presumed disabled if his or her
       impairments meet or medically equal one contained in the
       Listing of Impairments described in 20 C.F.R. Pt. 404,
       Subpt. P, App. 1 (hereafter "Listing of Impairments").  *Id.*  If
       the claimant's impairments do not meet or medically equal
       one listed in the regulations, the analysis proceeds to the
       fourth step.

4.     If the claimant is still able to perform his or her past
       relevant work, he or she is not disabled and the analysis
       ends here.  *Id.*  "If the claimant cannot do any work he or
       she did in the past, then the claimant's case cannot be
       resolved at [this step] and the evaluation proceeds to the
       fifth and final step."  *Id.* at 1098-99.

5.     If the claimant is unable to perform his or her past relevant
       work due to a "severe impairment (or because [he or she
       does] not have any past relevant work)" the court will
       determine if the claimant is able to make an adjustment to
       perform other work, in light of his or her residual functional
       capacity, age, education, and work experience.  20 C.F.R. §
       404.1520(g).  If an adjustment to other work is possible then
       the claimant is not disabled.  *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four,

but at the fifth step the Commissioner bears the burden of establishing

that there is other work in significant numbers in the national economy

that the claimant can perform.  *Id.*  The Commissioner can meet this

burden via the testimony of a vocational expert or reference to the

Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.  <u>THE ALJ's OPINION</u>

The ALJ followed the five-step sequential evaluation process in considering Brown's claims and in determining that Brown experienced some limitations in functioning, but did not meet the strict standard for disability under the Act during the relevant time period. *Tr. 7-23.*

The ALJ first found that Brown was insured for disability from March 23, 1997, Brown's alleged disability onset date, through June 30, 2005. *Tr. 13.* The ALJ then determined that, while Brown performed some work from 2000 to 2002, Brown did not engage in substantial gainful activity from March 23, 1997, through June 30, 2005. *Tr. 14.*

Next, the ALJ found that the medical evidence established that, on or before June 30, 2005, Brown had the following medically determinable severe impairments:

> a history of in (sic) a severely comminuted calcaneus fracture of the right ankle on March 23, 1997, status post open reduction and internal fixation of her right calcaneus fracture with iliac crest bone graft with multiple follow-up surgeries for restoration of the

function and relief of persistent pain symptoms; post-traumatic degenerative joint disease/arthritis of the right foot, status post arthroscopic surgery on April 8, 2002, with extensive debridement and resection of spurs; and trochanteric bursitis of the right hip.

*Tr. 14.*

The ALJ then found that while Brown may have been disabled after her March 1997 car accident, that disability ended no later than December 19, 2002. *Tr. 15.* The ALJ thus concluded that because Brown did not submit an application for disability within one year of the ending of that disability, Brown was not entitled to DIB benefits for any time before December 19, 2002. *Tr. 15-16.*

Next, the ALJ assessed whether Brown suffered from an impairment or combination of impairments that met or equaled one in the Listing of Impairments during the period from December 19, 2002, the date the ALJ found Brown's disability to have ended, through June 30, 2005, the date Brown was last insured. The ALJ concluded that Brown did have major dysfunction in her right ankle joint with chronic joint pain and stiffness, but that Brown did not have an inability to ambulate effectively and thus her impairments did not meet the criteria of the Listing of Impairments. *Tr. 18.*

The ALJ then determined that, from December 19, 2002, through June 30, 2005, Brown retained the residual functional capacity to perform sedentary work. *Tr. 19.* The ALJ noted that the vocational expert's "Past Work Summary" shows that Brown's past relevant work as a legal assistant was sedentary as actually performed by Brown. *Tr. 21* (citing *Tr. 165*). Comparing Brown's residual functional capacity with the physical and metal demands of this work, the ALJ concluded that Brown could perform her past relevant work as a legal assistant. *Tr. 18, 21.* Accordingly, the ALJ concluded that Brown was not under a disability at any time from December 19, 2002, through June 30, 2005. *Tr. 22.*

## V.   PARTIES' ARGUMENTS

Brown argues the ALJ erred in assessing medical source opinions and the credibility of her subjective statements. Brown argues that her subjective complaints of pain are consistent with the objective medical findings of her treating physicians. *Brown's Br. (ECF 11) at 19-29.*

Second, Brown argues the ALJ erred by failing to find that her diagnosed pes planus, right foot and ankle pain, and regional pain

syndrome meet an impairment in the Listing of Impairments. *ECF 11 at 19-24*.

Third, Brown argues the ALJ erred by not accepting Dr. Schabacker's opinion that she could sit indefinitely with her leg elevated. *ECF 11 at 19-24*.

Fourth, Brown argues that the ALJ erred in posing a hypothetical question to the vocation expert that did not set forth all of her impairments.

In response, the Commissioner argues that the ALJ: (1) properly considered the evidence regarding Brown's pain and based his decision on substantial evidence in the record, *Commissioner's Br. (ECF 16) at 4-8*; (2) reasonably discounted Brown's subjective complaints, *id. at 8-11*; and (3) posed a hypothetical question to the vocational expert that captured all of Brown's functional limitations, *id. at 12*. Finally, the Commissioner argues that if the Court finds that the decision denying Brown's claims is not supported by substantial evidence, the Court should remand for further administrative proceedings rather than reverse for an award of benefits. *Id. at 13*.

## VI. DISCUSSION

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. The Court is not permitted to re-weigh the evidence. Considering Brown's allegations of error and applying controlling Ninth Circuit authority, the Court concludes, as discussed below, that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error.

### A. Determination of the Relevant Time Period

Brown contends the ALJ used an inappropriate legal standard when he determined that her condition improved as of December 19, 2002, and that he should have instead made a specific finding of "medical improvement" under the standards for terminating benefits. *See Brown's Reply (ECF 18) at 4.* But such criteria are applicable only in determining the cessation of disability for a person who is already a "recipient of benefits[.]" 42 U.S.C. § 423(f); *Ordewald v. Barnhart*, 351 F. Supp. 2d 499, 503 (W.D. Va. 2005) aff'd, 158 F. App'x 443 (4th Cir. 2005) (finding "medical improvement" criteria not relevant when

plaintiff had never been found entitled to a period of disability and disability insurance benefits).  Because Brown has not been found disabled nor been awarded disability insurance benefits, the ALJ was not required to apply medical improvement standards.

The ALJ found that while Brown may have been disabled as a result from her injury and subsequent surgeries, the medical evidence demonstrated that she recuperated by December 19, 2002.  The ALJ then assessed whether Brown's severe impairments were disabling from December 19, 2002, through her date last insured, June 30, 2005.

The ALJ committed no legal error in framing the case as he did.  In *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1456 (9th Cir. 1995), the Ninth Circuit affirmed an ALJ's determination that a claimant was not disabled.  There, the plaintiff suffered a back injury in 1969, and underwent surgery in 1977.  *Flaten*, 44 F.3d at 1456.  The ALJ found that the plaintiff's condition was disabling from 1976 through 1978, but that the plaintiff subsequently recovered in 1978.  *Id.* at 1463.  The ALJ then determined that the plaintiff retained the residual functional capacity to perform sedentary work "after her

recuperation from the 1977 surgery through the date that her insured

status lapsed[,]" and thus was not disabled from a time on or before the

lapse of her insured status. *Id*. at 1456-57. Finding this conclusion

supported by substantial evidence, the Ninth Circuit affirmed the

denial of benefits. *Id*. at 1463-1465.

The ALJ here also based his finding that Brown had recuperated

by December 19, 2002, on substantial evidence. The ALJ noted that:

(1) Brown's last surgery occurred in April 2002, and Brown was initially

very satisfied with the results; (2) she began complaining of gradual

recurrence of her pain in July 2002 and on December 19, 2002, she

received an injection into her right hip after which she reported

immediate relief of her pain; (3) in a follow up visit in April 2003,

Brown reported further relief of her pain, and her doctor indicated that

she had fluid range of motion in her right ankle; (4) after a cortisone

injection on April 29, 2003, Brown received no further treatment

related to her right ankle or right hip for approximately two years; and

(5) Brown became pregnant and delivered a healthy baby boy on

January 31, 2004, and there was no indication that she had any

problems carrying her child to term or caring for him after his birth due to her right ankle or hip impairments, or that she complained of significant right ankle or right hip pain during this period. *Tr. 15-16*.

In order to qualify for DIB benefits, a claimant must apply for benefits within 12 months of the end of any disability. 20 C.F.R. § 404.315(a)(3). The ALJ found Brown not disabled after December 2002, a finding based upon substantial evidence, and Brown did not file her first application for benefits until May 2006. Thus, even if Brown was disabled before December 2002, a finding not specifically made here, she would not be entitled to benefits for that earlier period.

In addition, because Brown applied for benefits after the expiration of her insured status, she must show that her disability was "continuously disabling from the time of onset during insured status to the time of application for benefits[.]" *Flaten*, 44 F.3d at 1460. In light of the ALJ's finding that Brown was not disabled from December 2002 through the expiration of her insured status, Brown has failed to show that her disability was continuous.

**B.** **ALJ's Consideration of the Evidence**

Brown argues that the ALJ "failed to provide proper weight to the objective test findings, multiple surgical findings, and examination findings and opinions of [Brown's] treating physicians[,]" and cites to each of her multiple surgeries and treatments from 1997 through 2005. *ECF 11 at 13-18.*

In evaluating Brown's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted). In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed decision. *Tr. 10-22.* He set forth his rationale for both accepting and rejecting certain evidence in his assessment of Brown's medical records, credibility, and residual functional capacity. *Tr. 16-22.* In his decision, he also set forth the

evidence – which the Court concludes is substantial – that informed and supported his conclusion with respect to Brown's disability claims. *Id.* For these reasons, the Court finds unpersuasive Brown's general argument that the ALJ's decision is not based on substantial evidence. The Court addresses Brown's specific claims of error in more detail below.

### 1. Severity of Brown's Impairments

Brown argues that the ALJ erred by not including pes planus (i.e., flat feet), right foot and ankle pain, and "regional pain syndrome" in the list of severe impairments at step two of the sequential process. *ECF 11 at 19-24.*

The ALJ's failure to list these specific impairments as severe, if error, is harmless because the ALJ adequately addressed the symptoms and limitations associated with these impairments when he performed the residual functional capacity assessment at steps three and four of the sequential evaluation. As long as any one of a claimant's impairments is found to be severe, the ALJ's analysis moves along the sequential evaluation process. 20 C.F.R. § 404.1520(a)(4); *see also*

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("the step-two inquiry is a de minimis screening device to dispose of groundless claims").  When the residual functional capacity is formulated between steps three and four, the ALJ must consider all of claimant's severe and non-severe medically-determinable impairments.  20 C.F.R. § 404.1545(a)(2).  In *Lewis v.* Astrue, 498 F.3d 909, 911 (9th Cir. 2007), the Ninth Circuit held that the failure to find a particular condition severe was harmless when the ALJ discussed it later in the sequential evaluation process and included relevant restrictions.  *Compare Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2013) (holding that ALJ improperly excluded a diagnosis of panic disorder in considering claimant's residual functional capacity).

The ALJ did not err by failing to include pes planus, right foot and ankle pain, and "regional pain syndrome" in the list of impairments at step two of the sequential process.  First, pes planus is identified in some radiology reports (*see, e.g.*, *Tr. 372, 377, 385*), but there is no indication that Brown's pes planus was distinct from the foot injuries that resulted from her 1997 accident.  The severity findings of the ALJ

accounted for both her 1997 accident and the series of subsequent surgeries. *Tr. 15.* Brown's pes planus condition was accounted for in the ALJ's other severity findings and the ALJ thoroughly discussed Brown's functional limitations related to her foot and ankle injury. The ALJ did not err in not listing pes planus as a severe impairment.

Second, the ALJ was not required to find Brown's right foot and ankle pain severe. Pain is a symptom, not a medically-determinable impairment. "Symptoms" are a claimant's "own description of [her] physical or mental impairment." 20 C.F.R. § 404.1528(a); *see also* 20 C.F.R. § 404.1529(a). Moreover, the ALJ clearly discussed Brown's pain complaints when he made his residual functional capacity assessment. *Tr. 19-20.* The ALJ did not err in not listing right foot and ankle pain as a severe impairment.

Third, with regard to "pain syndrome," the parties cite to no clear diagnosis in the record. The first mention appears in Dr. Kopplin report of his first visit with Brown in March 2002, wherein he notes that she "perhaps" had "mild pain syndrome." *Tr. 453.* In the record of an April 2002 appointment, Dr. Kopplin wrote, "She does have mild

pain in the anterior tibia, which is indicative of a regional pain syndrome." *Tr. 449.* There is no affirmative diagnosis of regional pain syndrome by Dr. Kopplin or any other physician. And, as noted above, the ALJ thoroughly discussed Brown's pain complaints when assessing Brown's residual functional capacity. The ALJ did not err in not listing regional pain syndrome as a severe impairment.

Even if the failure to list pes planus, right foot and ankle pain, and regional pain syndrome as severe impairments were error, the Court finds that the error is harmless because the ALJ did subsequently consider Brown's complaints of pes planus, right foot and ankle pain, and regional pain syndrome in assessing whether Brown's impairments fell under the Listing of Impairments, and in assessing Brown's residual functional capacity.

### 2. Assessment of Brown's Credibility

Brown argues the ALJ improperly discredited her testimony. *ECF 11 at 24-28.* In *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), the Ninth Circuit restated the long-standing standard for assessing a claimant's credibility as follows:

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms. At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A). In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotations omitted).

The ALJ found that Brown was no longer complaining of significant ankle and right hip pain by late 2002 or early 2003, and that Brown did not receive any treatment or evaluation related to her right ankle from April 2003 to February 2005. *Tr. 19.* He also found that the medical records revealed no significant complaints of right ankle or right hip pain after the birth of her child in January 2005. *Tr. 20.* These were proper bases to discount credibility. *See* 20 C.F.R. § 404.1529(c)(3)(ii) (ALJ considers the "location, during frequency, and intensity" of pain and other symptoms); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (finding ALJ provided clear and convincing reasons for rejecting claimant's testimony by citing, in part, medical reports of improvement that contradicted claimant's claims of lack of improvement); *Flaten*, 44 F.3d at 1464 (finding, in part, that the claimant's "relative absence of medical problems" following her surgery supported ALJ's decision to discredit claimant's testimony).

The ALJ also relied on the fact that evidence in the record indicated that Brown's ability to sit was not significantly limited before

her date last insured.  *Tr. 20.*  Inconsistency between a claimant's statements at the hearing and contemporaneous statements to doctors and other evidence is also an appropriate factor to consider as part of a credibility finding.  *See* 20 C.F.R. § 404.1529(c)(4) (ALJ must consider whether there are conflicts between a claimant's statements and the rest of the evidence); *Morgan*, 169 F.3d at 599-600 (finding ALJ provided clear and convincing reasons for rejecting claimant's testimony by citing, in part, claimant's inconsistent statement to doctor regarding her activities).

The ALJ noted that Brown's statements to her doctors reflected daily activities that were inconsistent with her claims of disability.  *Tr. 20.*  An ALJ must consider a claimant's activities when evaluating her credibility.  20 C.F.R. § 404.1529(c)(3)(i); *see also Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (upholding adverse credibility finding where claimant's self-reported activities undermined his credibility).  The ALJ reasonably noted that many of Brown's daily activities reported to her doctors both before and after her date last insured were inconsistent with the limitation of keeping her foot

elevated at all times while seated. *Tr. 20; 533-34.* For instance, the ALJ noted that there was no indication in the record that Brown had any problems carrying her child to term or caring for him after his birth in 2004. *Tr. 19-20.* The ALJ also noted that caring for an infant would require frequent sitting, walking, and lifting and carrying up to 10 pounds, and that the medical records do not indicate that Brown had any significant complaints of right ankle or right hip pain after the birth of her child through January 2005. *Tr. 20.*

The ALJ's credibility finding is supported by substantial evidence and meets the clear and convincing standard. The Court cannot substitute its own interpretation of the evidence for the ALJ's interpretation. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citation omitted). The ALJ did not err.

### 3. Dr. Schabacker's "Opinion"

Brown argues that the ALJ erred in not accepting Dr. Schabacker's "opinion" that Brown could sit indefinitely with her leg

elevated, citing to Dr. Schabaker's June 1, 2006 consultation note. *ECF 11 at 27* (citing *Tr. 531*). Typically, an ALJ must articulate clear and convincing reasons for discounting an uncontroverted opinion of a treating physician. *See Smolen*, 80 F.3d at1285. This notation appears in the "Subjective" section of Dr. Schabaker's notes, not in "Impression" or "Discussion" section. And the statement is surrounded by language that makes it clear that it is a recording of Brown's description of her limitations:

> [Brown] reports that she is able to walk up to 20 minutes at a time before pain indicated the need to rest. She is able to sit indefinitely with her foot elevated. She is able to dress independently. She notes that horseback riding is real hard. She is able to clean the house, but requires frequent rests. She acknowledges having adjusted her lifestyle to accommodate her pain.

*Tr. 531*. In this context, it is clear that this portion of the medical record is not Dr. Schabacker's opinion on Brown's functional limitations, but rather a recitation of Brown's own subjective complaints as relayed to him. An ALJ may discount a medical opinion that merely recites a plaintiff's subjective complaints. *Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1228 (9th Cir. 2009). Brown's claim

that the ALJ erred in discounting this statement is misplaced. In the "Discussion" section of his report, Dr. Schabaker notes that Brown in "doing quite well." *Tr. 531.*

Although the ALJ also discounted two opinion letters written by Dr. Schultz in 2008 and 2009, Brown does not raise this as error in her brief. The Court therefore declines to address this particular finding. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161, n. 2 (9th Cir. 2008) (declining to address a specific finding by the ALJ when claimant failed to argue the issue with any specificity in his briefing).

### 4.   <u>Hypothetical Question to Vocational Expert</u>

Brown argues that the ALJ erred in posing a hypothetical question to the vocational expert that did not set forth all of her impairments. *ECF 11 at 28-29.* The Court rejects this argument. Where, as here, a claimant fails to show that she is unable to return to her previous work, the burden of proof remains with the claimant. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Vocational expert testimony at this step in the sequential evaluation is therefore "useful, but not required" to support the ALJ's decision. *Id.*

Here, the ALJ did not rely on the vocational expert's response to a hypothetical when he concluded that Brown could perform her past relevant work. Instead, after finding that Brown could perform the full range of sedentary work, the ALJ used only the vocational expert's "Past Work Summary" to determine that the legal assistant job performed by Brown was sedentary. *Tr. 21, 165, 662.* Because the ALJ did not rely on the vocational expert's testimony, whether or not the ALJ erred in not including all of Brown's limitations in a hypothetical is irrelevant to his ultimate determination. Accordingly, any error in this regard is harmless. *See Matthews*, 10 F.3d at 681.

## VII. <u>CONCLUSION</u>

Based on the foregoing,

**IT IS RECOMMENDED** that Brown's summary judgment motion *(ECF 10)* be DENIED, the Commissioner's summary judgment motion *(ECF 16)* be GRANTED, and the Commissioner's decision denying DIB be affirmed.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of the United States

Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 9th day of January, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge